IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-591-D

KIMBERLY J. HAYNES, as Executrix )
of the ESTATE OF BLANCHE LORENE )
CHEELEY (Deceased), and JAMES )
EDMOND CHEELEY, )
)
Plaintiffs, )
)
v. )                                    **ORDER**
)
ROCKY MOUNT CYCLES, INC., et al., )
)
Defendants. )

On July 25, 2023, Kimberly J. Haynes ("Haynes"), executrix of Blanche Lorene Cheeley's

("Blanche Cheeley") estate, and James Edmond Cheeley ("James Cheeley") (collectively,

"plaintiffs") filed a complaint in Northampton County Superior Court against Rocky Mount

Cycles, Inc. f/k/a Black Cat Harley Davidson ("Rocky Mount Cycles"); MS Family Enterprises,

Inc. d/b/a Bayside Harley-Davidson; Slaughter, Inc. d/b/a Bayside Harley-Davidson (Portsmith

CI); Harley-Davidson, Inc.; Harley-Davidson Motor Company, Inc.; Harley-Davidson Motor

Company Group, LLC; Harley-Davidson Motor Company Operations, Inc.; Bosch Brake

Components, LLC; Robert Bosch, LLC; Bosch Global Software Technologies Private Limited;

and KV Motorcycle Sales Inc. (collectively "defendants"), alleging ten causes of action arising

from a fatal motorcycle accident. See [D.E. 1-2] ¶¶ 103–229. On October 20, 2023, defendants

removed the action to this court under diversity jurisdiction and alleged that plaintiffs fraudulently

joined Rocky Mount Cycles to defeat diversity. See [D.E. 1] ¶ 7. On November 14, 2023,

plaintiffs moved to remand [D.E. 28]. On November 22, 2023, and December 5, 2023, defendants

responded in opposition [D.E. 30, 31, 32, 33, 35]. On January 17, 2024, plaintiffs replied [D.E. 37]. As explained below, plaintiffs fraudulently joined Rocky Mount Cycles. Thus, the court dismisses Rocky Mount Cycles as a defendant, has diversity jurisdiction, and denies plaintiffs' motion to remand.

I.

James Cheeley and Blanche Cheeley ("the Cheeleys") were citizens and residents of Nash County, North Carolina. See Compl. [D.E. 1-2] ¶¶ 1, 3. On May 8, 2021, the Cheeleys purchased and received a 2021 Harley-Davidson ("HD") Trike motorcycle ("HD motorcycle") from Bayside HD in Virginia. See id. ¶¶ 4, 73–75. The Cheeleys registered the HD motorcycle. See id. at ¶ 4.

On July 23, 2021, the Cheeleys took the HD motorcycle to Rocky Mount Cycles for "warranty repair after noticing an oil leak on the floor of their garage." Id. at ¶ 79; see [D.E. 1-20] (work order). On July 23 or 24, 2021, Rocky Mount Cycles repaired the oil leak under the original manufacturer's warranty. See Compl. ¶¶ 83, 224(a); [D.E. 33-4] ¶¶ 3–4 (service technician affidavit). On July 24, 2021, Rocky Mount Cycles returned the HD motorcycle to the Cheeleys. See Compl. ¶ 83. When Rocky Mount Cycles serviced the HD motorcycle to repair the oil leak, nobody had issued a recall for the 2021 HD Trike motorcycles' braking systems. See [D.E. 33-4] ¶¶ 6–8; cf. [D.E. 33-3] 2.

On July 25, 2021, while James Cheeley drove the HD motorcycle and Blanche Cheeley was a passenger, the Cheeleys crashed on I-95 in Northampton County, North Carolina. See Compl. ¶¶ 33, 86–88. As a result of the crash, Blanche Cheeley died, and James Cheeley was seriously injured. See id. at ¶¶ 33, 89–90. Haynes is executrix of Blanche Cheeley's estate. See id. at ¶ 2. Plaintiffs allege that an undisclosed design defect, flaw, or fault in the HD motorcycle caused the HD motorcycle to pull to the left due to the unintentional and spontaneous activation

2

of the rear braking system as plaintiffs traveled on I-95. See id. at ¶¶ 33, 40, 41, 48–49, 53–62, 91.

On July 25, 2023, plaintiffs filed suit in Northampton County Superior Court, alleging ten claims for relief against numerous defendants, including Harley-Davidson and the Virginia HD dealership. See id. at ¶¶ 103–229. Plaintiffs also included Rocky Mount Cycles, a North Carolina corporation, as a defendant. See id. at ¶¶ 17, 18, 220–29. Plaintiffs bring a negligence claim and a gross negligence claim against Rocky Mount Cycles for its alleged failure to properly service and inspect the vehicle and its alleged failure to warn plaintiffs of dangers related to an alleged faulty rear brake system. See id. at ¶¶ 220–29. Plaintiffs allege that Rocky Mount Cycles knew about the alleged design defect in the braking system in this HD motorcycle. See id. at ¶¶ 80–82. Plaintiffs contend that James Cheeley had a similar but non-fatal accident in October 2020 while driving a 2015 HD Trike motorcycle. See id. at ¶¶ 53–62.

On September 22, 2023, plaintiffs produced to defendants a July 24, 2021 work order estimate from Rocky Mount Cycles that confirmed the limited service that Rocky Mount Cycles provided for plaintiffs' HD motorcycle in July 2021. See [D.E. 1] ¶ 32; [D.E. 1-20]. After defendants received the July 24, 2021 work order estimate from plaintiffs, defendants removed this action to this court. See [D.E. 1]. In removing the action, defendants argued that plaintiffs fraudulently joined Rocky Mount Cycles to defeat diversity jurisdiction because plaintiffs had no possibility of stating a negligence or gross negligence claim against Rocky Mount Cycles. See id. at ¶¶ 25–54. On November 14, 2023, plaintiffs moved to remand. See [D.E. 28].

## II.

"[F]ederal courts, unlike most state courts, are courts of limited jurisdiction," that Congress created "with specified jurisdictional requirements and limitations." Strawn v. AT&T Mobility

LLC, 530 F.3d 293, 296 (4th Cir. 2008); see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Removal from state court requires the federal district court to have original jurisdiction over the removed action. See 28 U.S.C. § 1441(a); Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005). Accordingly, a defendant generally may remove an action to federal court only if the face of the complaint demonstrates diversity jurisdiction or federal question jurisdiction. See 28 U.S.C. § 1441(b).

In a case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The party seeking removal has the "burden of establishing federal jurisdiction." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994); see Hughes v. Wells Fargo Bank, N.A., 617 F. App'x 261, 263 (4th Cir. 2015) (per curiam) (unpublished). "If diversity jurisdiction is challenged, the burden of proof remains on the party invoking federal court jurisdiction, and the citizenship of each real party in interest must be established by a preponderance of the evidence." Roche v. Lincoln Prop. Co., 373 F.3d 610, 616 (4th Cir. 2004), rev'd on other grounds, 546 U.S. 81 (2005). "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." Mulcahey, 29 F.3d at 151; see Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941). "If federal jurisdiction is doubtful, a remand is necessary." Mulcahey, 29 F.3d at 151; see Common Cause v. Lewis, 956 F.3d 246, 252 (4th Cir. 2020); Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008). In a case removed based on diversity jurisdiction, the civil action must be between "citizens of different States" and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a)(1).

The doctrine of fraudulent joinder allows a federal district court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over

a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). "To show fraudulent joinder, the removing party must demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (emphasis and quotation omitted); see Weidman v. Exxon Mobil Corp., 776 F.3d 214, 218 (4th Cir. 2015); Turner v. JP Morgan Chase Bank, N.A., 543 F. App'x 300, 301 (4th Cir. 2013) (per curiam) (unpublished); Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993); Higgs v. Brian Ctr. Health & Ret./Windsor, Inc., 367 F. Supp. 3d 439, 446–48 (E.D.N.C. 2019).

To establish that plaintiffs have no possibility of establishing a negligence claim or gross negligence claim against Rocky Mount Cycles in state court, defendants must show that there would be no "glimmer of hope" or even a "slight possibility of a right to relief" against Rocky Mount Cycles in state court. Hartley, 187 F.3d at 426; see Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015). Under this standard, the court resolves all issues of law and fact in plaintiffs' favor. See Hartley, 187 F.3d at 424; Hughes, 617 F. App'x at 264; Johnson, 781 F.3d at 704.

"[T]o determine whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990) (quotation omitted); see Balt. Cnty. v. Cigna Healthcare, 238 F. App'x 914, 920 (4th Cir. 2007) (unpublished); Boss v. Nissan N. Am., Inc., 228 F. App'x 331, 335 (4th Cir. 2007) (per curiam) (unpublished); Mayes, 198 F.3d at 464. The court may take

5

judicial notice of documents attached to the notice of removal. See, e.g., Fed. R. Evid. 201; cf. Lolavar v. de Santibanes, 430 F.3d 221, 224 n.2 (4th Cir. 2005).

Plaintiffs' motion to remand requires the court to consider plaintiffs' North Carolina state law negligence claims. See Compl. ¶¶ 220–29. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from the Supreme Court of North Carolina, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

Plaintiffs argue that the court must remand the case for lack of subject-matter jurisdiction because (1) defendant Rocky Mount Cycles and plaintiffs are all citizens of North Carolina, (2) defendants have not met their burden to show that plaintiffs fraudulently joined Rocky Mount

6

Cycles, and (3) the removal was untimely because it exceeded the mandatory 30-day window for removal under 28 U.S.C. § 1446(b)(1). See [D.E. 29] 6.

A.

"The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief . . . or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1). Moreover, "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order[,] or other paper from which it may first be ascertained that the case is one which is or has become removable." Id. § 1446(b)(3). No party may remove an action based on diversity jurisdiction "more than [one] year after" the action commenced. Id. § 1446(c)(1).

Plaintiffs argue that defendants' October 20, 2023 removal was untimely under section 1446(b)(1) because they removed the action more than 30 days after service of the complaint upon defendants. See [D.E. 29] 8–9. Defendants respond that their removal was timely under 28 U.S.C. § 1446(b)(3). See [D.E. 33] 6–8.

On September 22, 2023, plaintiffs produced to defendants a July 24, 2021 work order estimate from Rocky Mount Cycles that confirmed the limited service that Rocky Mount Cycles provided for plaintiffs' HD motorcycle in July 2021. See id. at 7. This work order estimate qualifies as "other paper" under 28 U.S.C. § 1446(b)(3). Thus, defendants timely removed this action. See id.; see, e.g., Boss, 228 F. App'x at 334; Bennett v. Segway, Inc., No. 1:11CV09, 2011 WL 3667287, at *3–4 (W.D.N.C. Aug. 22, 2011) (unpublished).

7

**B.**

Plaintiffs argue that the court must limit its consideration of fraudulent joinder to the four corners of the complaint. See [D.E. 37] 3–4. Defendants disagree and cite AIDS Counseling & Testing Centers, 903 F.2d at 1004. In AIDS Counseling, the Fourth Circuit held that "to determine whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." Id. (quotation omitted). Plaintiffs reply that AIDS Counseling applies only to attempts to add a non-diverse defendant through an amended complaint. See [D.E. 37] 4 (citing Allard v. Laroya, 163 F. Supp. 3d 309, 310–12 (E.D. Va. 2016); Kinley v. Husqvarna Consumer Outdoor Prod., N.A., Inc., No. 5:18-CV-1845, 2018 WL 4403391, at *1 n.1 (D.S.C. Sept. 17, 2018) (unpublished)); cf. AIDS Counseling, 903 F.2d at 1004.

This court disagrees with the Allard court's and Kinley court's interpretation of AIDS Counseling and does not limit the Fourth Circuit's holding in AIDS Counseling to attempts to add a non-diverse defendant through an amended complaint. See, e.g., Lohr v. Chemours Co. FL, LLC, No. 7:20-CV-189, 2021 WL 9930063, at *5, 8 (E.D.N.C. Sept. 27, 2021) (unpublished); Higgs, 367 F. Supp. 3d at 445–48. Thus, the court rejects plaintiffs' argument concerning AIDS Counseling and considers the discovery papers and affidavits in applying the "no possibility" standard. See, e.g., Boss, 228 Fed. App'x at 335–36; Lohr, 2021 WL 9930063, at *5, 8; Higgs, 367 F. Supp. 3d at 445–48; Systems2 Commc'ns Inc. v. Comcast Corp., No. 7:10-CV-501, 2011 WL 335254, at *2 (W.D. Va. Jan. 27, 2011) (unpublished).

As for the merits of the fraudulent joinder dispute, defendants argue that plaintiffs cannot establish a negligence claim or a gross negligence claim against Rocky Mount Cycles because plaintiffs cannot show that Rocky Mount Cycles owed a duty to inspect, service, repair, or warn

8

plaintiffs about the HD motorcycle's non-recalled brake system when merely fixing an oil leak. See [D.E. 1] ¶¶ 25–40; [D.E. 33] 8–14; Compl. ¶¶ 79, 83; [D.E. 1-20]; [D.E. 33-4] ¶¶ 3, 6–8; cf. Compl. ¶ 223; [D.E. 33-3]. Plaintiffs respond that disputed factual issues require the court to reject defendants' fraudulent joinder argument. See [D.E. 29] 15–20.

Under North Carolina law, "[n]egligence is the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." Dunning v. Forsyth Warehouse Co., 272 N.C. 723, 725, 158 S.E.2d 893, 895 (1968) (quotation omitted); Moore v. Moore, 268 N.C. 110, 112, 150 S.E.2d 75, 77 (1966); Coulter v. Catawba Cnty. Bd. of Educ., 189 N.C. App. 183, 185, 657 S.E.2d 428, 430 (2008). To state an actionable claim, a plaintiff must plausibly allege that "(1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 93–94, 693 S.E.2d 149, 156 (2010) (quotation omitted); see Ward v. Carmona, 368 N.C. 35, 37, 770 S.E.2d 70, 72 (2015); Bridges v. Parrish, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013); Fussell v. N.C. Farm Bureau Mut. Ins. Co., 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010).

Absent a legal duty to an injured plaintiff, a defendant cannot be liable for negligence. See Mattingly v. N.C. R.R., 253 N.C. 746, 750, 117 S.E.2d 844, 847 (1961); Scott v. City of Charlotte, 203 N.C. App. 460, 464, 691 S.E.2d 747, 750–51 (2010); Hedrick v. Rains, 121 N.C. App. 466, 469, 466 S.E.2d 281, 283 (1996). Whether a legal duty exists is a question of law. See Pinnix v. Toomey, 242 N.C. 358, 362, 87 S.E.2d 893, 897 (1955); Davidson v. Univ. of N.C. at Chapel Hill, 142 N.C. App. 544, 552, 543 S.E.2d 920, 925 (2001).

9

North Carolina law "imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm, and calls a violation of that duty negligence." Council v. Dickerson's, Inc., 233 N.C. 472, 474, 64 S.E.2d 551, 553 (1951); see 22 Strong's N.C. Index 4th, Negligence, § 9 (Feb. 2024); Rouse v. Duke Univ., 914 F. Supp. 2d 717, 727 (M.D.N.C. 2012). Such a duty, however, "extends only to causes of injury that were reasonably foreseeable and avoidable through the exercise of due care." Fussell, 364 N.C. at 226, 695 S.E.2d at 440. In determining whether a duty exists, a contract may help to show "the relationship of the parties and the nature and extent of the common law duty on which [a negligence claim] is based." Pinnix, 242 N.C. at 362, 87 S.E.2d at 898.

Defendants argue that the Cheeleys' July 23, 2021 contract with Rocky Mount Cycles to service the HD motorcycle for a warranty repair of an oil leak did not create an open-ended duty to inspect and warn plaintiffs about potential defects with every other part of the HD motorcycle. See [D.E. 33] 9, 12–13. In support, defendants cite Wilson v. ELRAC, Inc., No. 5:12-CV-660, 2013 WL 5592882, at *8–9 (E.D.N.C. Oct. 10, 2013) (unpublished), and Boss, 228 F. App'x at 335–36.

In Wilson, the plaintiff took a rental car to a tire repair shop because "the rear tires were 'bald.'" Wilson, 2013 WL 5592882, at *2. The tire repair shop replaced the rear tires. See id. The next day, plaintiff returned to the tire repair shop and reported that the vehicle was swerving. See id. The tire repair shop added air to the front tires. See id. Later that day, the plaintiff had a car accident. See id. at *2–3. Plaintiff sued the tire repair shop for negligence and argued that the tire repair shop failed to diagnose mechanical defects with the vehicle's "braking, tie rod, and suspension," causing the plaintiff to be "unable to steer" the vehicle. Id. at *8.

10

The court dismissed the negligence claim and held that there was no evidence that the tire repair shop agreed to undertake any duties other than inspecting, replacing, and filling the tires. See id. at *8. In support of its holding, the court observed that "[g]enerally, a service provider only has a duty to exercise reasonable care in performing the services it agreed to undertake." Id.

In Boss, the Fourth Circuit affirmed the district court's holding that a plaintiff fraudulently joined a Jiffy Lube store. There, the plaintiff asserted a negligence claim against a Jiffy Lube store for failure to maintain and repair a vehicle's power steering mechanism and for failure to instruct the plaintiff on the maintenance and inspection of the vehicle's power steering components. See Boss, 228 F. App'x at 335–36. Citing affidavits from a Jiffy Lube manager, the Fourth Circuit observed that Jiffy Lube agreed only to perform a full-service oil change on the vehicle. See id. The Fourth Circuit held that Jiffy Lube "cannot be held liable for failing to perform a service that it did not agree, or have an affirmative duty, to undertake." Id. at 336. In support of this holding, the Fourth Circuit cited the Restatement (Second) of Torts § 323 (Am. L. Inst. 1965), which states that "one who undertakes . . . to render services to another . . . is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform the undertaking." See Boss, 228 F. App'x at 335.

Plaintiffs argue that Wilson and Boss do not provide sufficient legal authority to conclude that plaintiffs have no possibility of success on their negligence claim or gross negligence claim against Rocky Mount Cycles. See [D.E. 37] 7. In support, plaintiffs note that Wilson is an unreported decision that no other court has cited. See id. As for Boss, plaintiffs note that the Fourth Circuit was applying Maryland law and only cited the Restatement (Second) of Torts to support its holding. See id.; Boss, 228 F. App'x at 335. Thus, plaintiffs argue that whether Rocky Mount Cycles owed plaintiffs a duty of care to inspect, service, repair, and warn plaintiffs about

11

the rear brake system is too unclear to warrant a finding of fraudulent joinder. See [D.E. 37] 7–8; see also Quast v. English Riding Supply, Inc., No. 4:22-CV-77, 2022 U.S. Dist. LEXIS 223563, at *11–13 (E.D.N.C. Dec. 12, 2022) (unpublished); Dahlgren v. Joza Props., LLC, No. 7:13-CV-118, 2013 WL 5494084, at *1–2 (E.D.N.C. Oct. 2, 2013) (unpublished).

Plaintiffs also cite Chavis v. American Honda Motor Co., Inc., No. 7:19-CV-153, 2019 WL 5420086 (E.D.N.C. Oct. 23, 2019) (unpublished), in support of remanding the action. In Chavis, the court remanded the action after finding that plaintiffs had a glimmer of hope to show that defendants "had a reasonable opportunity to discover the danger posed by the supplemental restraint system, should have known of the danger, and were negligent in failing to warn of a potential defect in other components of the supplemental restraint system." Id. at *4. In Chavis, plaintiff attached to his complaint a notice that the product-seller defendant had sent demonstrating knowledge of dangerous conditions in the passenger-side airbag inflator. See id. The Chavis court reached this conclusion even though plaintiff's claim related to service, maintenance, and adequate warnings concerning the driver-side airbag inflator. See id.

The court rejects plaintiffs' arguments. Boss persuasively examines the scope of legal duties created when a service provider agrees to undertake a specific service on a vehicle. Even though the Fourth Circuit applied Maryland law in Boss, the Fourth Circuit construed Maryland law to permit it to use the Restatement (Second) of Torts and the relevant contractual agreement to define the scope of the defendant's common law duty. Like Maryland appellate courts, North Carolina appellate courts use the Restatement (Second) of Torts and the relevant contractual agreement to define the scope of a common law duty. See Pinnix, 242 N.C. at 362–63, 87 S.E.2d at 897–98; Dickerson's Inc., 233 N.C. at 475, 64 S.E.2d at 553; Hedrick, 121 N.C. App. at 469–70, 466 S.E.2d at 283–84. As in Boss, plaintiffs brought the HD motorcycle to Rocky Mount

12

Cycles for a specific service, the warranty repair of an oil leak. Moreover, the discovery evidence and affidavit corroborate the scope of the service that Rocky Mount Cycles provided. See Compl. ¶¶ 79, 83; [D.E. 1-20]; [D.E. 33-4]. The July 23, 2021 contract and the Restatement (Second) of Torts define the scope of the duty that Rocky Mount Cycles owed to plaintiffs and that duty did not extend to inspecting, servicing, repairing, or warning the plaintiffs about the HD motorcycle's brake system.

As for Chavis, it is factually distinguishable. In Chavis, the plaintiff presented evidence that the product-seller defendant knew of defects in that specific model vehicle concerning a very similar component to the one giving rise to plaintiff's claim. See Chavis, 2019 WL 5420086, at *4. In contrast to Chavis, Rocky Mount Cycles did not sell the HD motorcycle. Moreover, the components of the rear braking system at issue in plaintiffs' negligence claim and gross negligence claim are not related to the components that Rocky Mount Cycles repaired when fixing an oil leak. Cf. Boss, 228 F. App'x at 335–36. Defendants have shown that plaintiffs' negligence claim and gross negligence claim against Rocky Mount Cycles have no possibility of success. See, e.g., Boss, 228 F. App'x at 335–36; Higgs, 367 F. Supp. 3d at 447–48; Capparelli v. AmeriFirst Home Improvement Fin. Co., 535 F. Supp. 2d 554, 560–61 (E.D.N.C. 2008).

Finally, plaintiffs argue that removal prevented them from producing more evidence to show some possibility that Rocky Mount Cycles agreed to a broader duty of care. See [D.E. 37] 8 & n.1. The Fourth Circuit rejected the same argument in Boss. See Boss, 228 F. App'x at 336. This court does too.

Plaintiffs fraudulently joined Rocky Mount Cycles. Thus, the court dismisses Rocky Mount Cycles as a defendant. Diversity jurisdiction exists, and the court denies plaintiffs' motion to remand.

13

## III.

In sum, the court DISMISSES defendant Rocky Mount Cycles from this action and DENIES plaintiffs' motion to remand [D.E. 28].

SO ORDERED. This 15 day of April, 2024.

JAMES C. DEVER III
United States District Judge

14