IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-591-D

| | |
|---|---|
| KIMBERLY J. HAYNES et al., | ) |
| Plaintiffs, | ) |
| v. | ) **ORDER** |
| ROCKY MOUNT CYCLES et al., | ) |
| Defendants. | ) |

On July 25, 2023, Kimberly J. Haynes and James Cheeley (collectively "Haynes" or "plaintiffs"), filed a complaint in Northampton Superior Court arising out of a motorcycle accident [D.E. 1-2]. Haynes asserts ten causes of action against various entities, including Robert Bosch LLC ("Robert Bosch"), Bosch Brake Components, LLC ("Bosch Components"), and Bosch Global Software Technologies Private Limited ("Bosch Software") (collectively "Bosch" or "defendants") [D.E. 1-2]. On October 23, 2023, the defendants removed the action to this court. [D.E. 1]. On November 14, 2023, Haynes moved to remand [D.E. 28]. On April 15, 2024, the court denied Haynes's motion [D.E. 42]. On June 28, 2024, Bosch moved to dismiss all claims against the Bosch defendants for lack of personal jurisdiction. [D.E. 49]. On July 19, 2024, Haynes responded in opposition [D.E. 56]. On August 2, 2024, Bosch replied [D.E. 57]. On September 26, 2024, Haynes filed an amended complaint [D.E. 60]. As explained below, the court grants the Bosch defendants' motion to dismiss the Bosch defendants for lack of personal jurisdiction.

I.

James Cheeley and Blanche Cheeley ("the Cheeleys") were citizens and residents of Nash County, North Carolina. See Am. Compl. [D.E. 60] ¶ 1. On May 8, 2021, the Cheeleys purchased a 2021 Harley-Davidson Trike motorcycle ("HD motorcycle") from a Virginia dealer. See id. ¶¶ 19, 70. On July 25, 2021, the Cheeleys crashed on I-95 in Northampton County, North Carolina while riding their HD motorcycle. See Am. Compl. ¶¶ 74–79. As a result of the crash, Blanche Cheeley died, and James Cheeley was seriously injured. See id. at ¶¶ 77–78. On August 2, 2023, James Cheeley died from his injuries. See id. at ¶ 79. Haynes is the executrix of both Cheeley estates. See id. at ¶¶ 3–4. Haynes alleges that an undisclosed design defect, flaw, or fault in the HD motorcycle caused the HD motorcycle to pull to the left due to the unintentional and spontaneous activation of the rear braking system as the Cheeleys traveled on I-95. See id. at ¶ 29.

Robert Bosch is a Delaware LLC with its principal place of business in Michigan. See [D.E. 49-4] ¶ 4. Robert Bosch designs and manufactures motorcycle systems and components, including the anti-lock braking system ("ABS") used in the HD motorcycle at issue. See [D.E. 49-3] ¶¶ 4–5. Each ABS is manufactured in South Carolina and then shipped to a firm in New Jersey. See [D.E. 49-3] ¶ 13. The New Jersey firm incorporates each ABS into larger components and then ships those components to Pennsylvania where Harley-Davidson installs them on new motorcycles. See [D.E. 49-3] ¶ 13. Robert Bosch also provides replacement parts to a Harley-Davidson distribution center in Wisconsin. See [D.E. 49-3] ¶ 12. Harley-Davidson distributes the finished motorcycles and replacement parts to various destinations, including North Carolina. See Am. Compl. ¶¶ 13, 45, 58, 26, 66.

2

Bosch Components is a Delaware LLC with its principal place of business in Illinois. See [D.E. 49-2] ¶ 3. Among other business activities, Bosch Components manufactures replacement brake pads and linings which it sells to wholesalers that cater to the retail aftermarket. See id. at ¶ 4. Except for Bosch Software,[1] Haynes maintains that the court has personal jurisdiction over Robert Bosch and Bosch Components. See [D.E. 56].

## II.

The court must have personal jurisdiction over a party to adjudicate a claim against that party. See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701 (1982); Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 131–32 (4th Cir. 2020). Here, no personal jurisdiction over a nonresident defendant exists unless jurisdiction comports with North Carolina's long-arm statute and the Fourteenth Amendment's Due Process Clause. See, e.g., Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004). North Carolina's long-arm statute extends personal jurisdiction over nonresident defendants consistent with the Fourteenth Amendment's Due Process Clause. See Christian Sci. Bd. of Dirs. v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Thus, the statutory inquiry merges with the constitutional inquiry. See id.; Atl. Corp. of Wilmington, Inc. v. TBG Tech Co., 565 F. Supp. 3d 748, 759 (E.D.N.C. 2021).

There are two types of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction. See Daimler AG v. Bauman, 571 U.S. 117, 126–27 (2014). If a court has general personal jurisdiction over a defendant, it may adjudicate "any and all claims" against that defendant. BNSF Ry. v. Tyrrell, 581 U.S. 402, 413 (2017); see Daimler, 571 U.S. at 127. Alternatively, specific personal jurisdiction "covers defendants less intimately connected with a

---

[1] Haynes concedes that the court lacks personal jurisdiction over Bosch Software. See [D.E. 56] 1 n.1. Accordingly, the court dismisses without prejudice all claims against Bosch Software and dismisses without prejudice Bosch Software as a defendant.

State, but only as to a narrower class of claims." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021). In either case, "because the personal jurisdiction requirement recognizes and protects an individual liberty interest, the requirement may be waived by a defendant's express or implied consent to the personal jurisdiction of the court." Fidrych, 952 F.3d at 131 (cleaned up); Ins. Corp. of Ireland, 456 U.S. at 703.

Absent consent, due process requires a defendant to have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 (1984) (cleaned up). The minimum-contacts analysis considers "the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283–84 (2014) (quotation omitted); see Ford, 592 U.S. at 358–60; Bristol-Myers Squibb Co. v. Super. Ct., 582 U.S. 255, 263–64 (2017). This analysis ensures that a defendant is not haled into a court's jurisdiction "solely as a result of random, fortuitous, or attenuated contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quotations omitted); see Ford, 592 U.S. at 359.

The minimum-contacts analysis focuses on whether a defendant "purposefully directed his activities at residents of the forum" and whether the causes of action arise out of or relate to those activities. Burger King, 471 U.S. at 472 (quotation omitted); see Ford, 592 U.S. at 359; Bristol-Myers, 582 U.S. at 262; ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002); Atl. Corp., 565 F. Supp. 3d at 760. If a defendant's contacts with the state are the basis for the suit, specific jurisdiction may exist. See ALS Scan, 293 F.3d at 712. In determining specific jurisdiction, the court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal

4

jurisdiction would be constitutionally reasonable." Id. (cleaned up). Thus, the "constitutional touchstone" of specific personal jurisdiction "remains whether the defendant purposefully established minimum contacts in the forum State." Burger King, 471 U.S. at 474 (quotation omitted); see Bristol-Myers, 582 U.S. at 264–66; Walden, 571 U.S. at 283–86.

First, in analyzing the extent to which a defendant purposefully availed itself of the privilege of conducting activities within a state, a court examines "various non-exclusive factors" including:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 352 (4th Cir. 2020) (quotation omitted); see Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009); Atl. Corp., 565 F. Supp. 3d at 760. Second, the plaintiff's claims must have arisen out of or relate to those activities that the defendant directed at the State. See Ford, 592 U.S. at 361–71; UMG Recordings, 963 F.3d at 354–55; Atl. Corp., 565 F. Supp. 3d at 760. Third, the court must analyze whether the exercise of personal jurisdiction is constitutionally reasonable. See Ford, 592 U.S. at 358; Bristol-Myers, 582 U.S. at 263; Burger King, 471 U.S. at 476–78; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Consulting Eng'rs, 561 F.3d at 279; Atl. Corp., 565 F. Supp. 3d at 760–61. This analysis "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." Consulting Eng'rs, 561 F.3d at 279. Such factors include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

Id.

When the court decides a pretrial motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction. See Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019); Sneha Media & Ent., LLC v. Associated Broad. Co., 911 F.3d 192, 196–97 (4th Cir. 2018); Mylan Lab'ys, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). In doing so, the court construes all relevant jurisdictional allegations in the complaint in the light most favorable to the plaintiff and draws the most favorable inferences for the existence of jurisdiction. See Hawkins, 935 F.3d at 226; Mylan Lab'ys, 2 F.3d at 60. The court, however, need not "credit conclusory allegations or draw farfetched inferences." Masselli & Lane, PC v. Miller & Schuh, PA, 215 F.3d 1320, 2000 WL 691100, at *1 (4th Cir. 2000) (per curiam) (unpublished table); Vision Motor Cars, Inc. v. Valor Motor Co., 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013). Blanket conclusory allegations about multiple defendants do not suffice. See Vision Motor, 981 F. Supp. 2d at 468; cf. Saudi v. Northrop Grumman Corp., 427 F.3d 271, 276–77 (4th Cir. 2005); Lianyungang FirstDart Tackle Co. v. DSM Dyneema B.V., 871 F. Supp. 2d 482, 488 (E.D.N.C. 2012).

A parent-subsidiary relationship does not by itself support jurisdiction. See Saudi, 427 F.3d at 276–77. Rather, a plaintiff must show more, such as an agency relationship or another reason to pierce the corporate veil. See id.; Lianyungang, 871 F. Supp. 2d at 488. A plaintiff must base her claim for personal jurisdiction "on specific facts set forth in the record." Magic Toyota,

6

Inc. v. Se. Toyota Distribs., Inc., 784 F. Supp. 306, 310 (D.S.C. 1992); see Hawkins, 935 F.3d at 226; Mylan Lab'ys, 2 F.3d at 60; Vision Motor, 981 F. Supp. 2d at 468.

A.

Haynes contends that Robert Bosch is subject to this court's personal jurisdiction under a stream of commerce theory because Robert Bosch was aware of the possibility that its ABS products would ultimately arrive in North Carolina. See [D.E. 56] 21–24. In support, Haynes contends that Robert Bosch placed "countless products into the stream of commerce" that ultimately arrived in North Carolina. See Am. Compl. ¶ 18.

For a stream of commerce theory to succeed, the record requires more than placing products into the stream of commerce. See In re Celotex Corp., 124 F.3d 619, 629 (4th Cir. 1997); Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945–46 (4th Cir. 1994); Watters v. CooperSurgical, Inc., 655 F. Supp. 3d 376, 383–84 (E.D.N.C. 2023). The record requires that the "defendant engaged in some activity purposefully directed at the forum state." Watters, 655 F. Supp. 3d at 383–84; see Celotex, 124 F.3d at 629; Lesnick, 35 F.3d at 945–46.

To that end, Haynes notes that Robert Bosch registered with the North Carolina Secretary of State as an out-of-state business and appointed an in-state agent to receive service. See [D.E. 56-1] 1–6. North Carolina law requires such a registration and appointment if an out-of-state entity wants the opportunity to conduct business in North Carolina. See N.C. Gen. Stat. §§ 55-15-01(a), 15-03(a), 15-05(a). The Fourth Circuit, however, has held that an "application to do business and the appointment of an agent for service to fulfill a state law requirement" does not satisfy the Due Process Clause of the Fourteenth Amendment for purposes of personal jurisdiction. Ratliff v. Cooper Lab'ys, Inc., 444 F.2d 745, 748 (4th Cir. 1971); see Bancredito Holding Corp. v. Driven

7

Admin. Servs. LLC, No. 5:23-CV-575, 2024 WL 731956, at *3 (E.D.N.C. Jan. 8, 2024) (unpublished).

Haynes also contends that Ford Motor Co. v. Montana Eighth Judicial District Court, 592 U.S. 351 (2021), supports personal jurisdiction over Robert Bosch. See [D.E. 56] 18–21. In Ford, the Court held that the state court in Montana had personal jurisdiction over claims arising from a Montana car accident even though the car was purchased out-of-state. See id. at 356–58. Moreover, Ford had a bevy of contacts with Montana by "selling, marketing, and servicing" its cars through local dealerships, advertising, and distribution deals. Id. at 355. Although the car at issue was purchased out-of-state, the claims arising from the Montana car accident did "relate to" Ford's numerous contacts with the forum. Id. at 362. This "strong relationship among the defendant, the forum, and the litigation" sufficed to support personal jurisdiction. Id. at 365 (quotation omitted).

Unlike Ford, Robert Bosch has no bevy of contacts with North Carolina. Cf. id. at 355. Moreover, Haynes has failed to support her allegation that Robert Bosch engaged in "substantial business activities" in North Carolina. Am. Compl. ¶ 18. On the contrary, the evidence demonstrates that Robert Bosch did not distribute, advertise, sell, market, service, or repair any ABS unit involved with the HD motorcycle in North Carolina. See [D.E. 49-3] 3. Furthermore, Robert Bosch has no manufacturing facilities, engineering facilities, or administrative offices in North Carolina. See [D.E. 49-4] 3. Additionally, even if Robert Bosch profited from the sale of products that ultimately arrived in North Carolina through the actions of third parties, that profit does not evince the purposeful direction necessary to support personal jurisdiction. Celotex, 124 F.3d at 629; Lesnick, 35 F.3d at 945–46; Watters, 655 F. Supp. 3d at 383–84. Without minimum contacts sufficiently related to Haynes's claims, the court lacks specific personal jurisdiction over

Robert Bosch. Even when drawing all inferences in Haynes's favor, Haynes has failed to demonstrate that the court has specific personal jurisdiction over Robert Bosch.

B.

Haynes contends this court has personal jurisdiction over Bosch Components because it is a subsidiary of Robert Bosch. See [D.E. 56] 3 n.2. As the Court has repeatedly explained, however, "[e]ach defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790, (1984); see Bristol-Myers, 582 U.S. at 268; Walden, 571 U.S. at 285–86; Rush v. Savchuk, 444 U.S. 320, 332 (1980). Moreover, a parent-subsidiary relationship cannot, without more, support personal jurisdiction. See Saudi, 427 F.3d at 276–77; Lianyungang, 871 F. Supp. 2d at 488. Of course, when a subsidiary is functionally the "alter ego" of its parent company, a court may impute the subsidiary's contacts to the parent company. See Sky Cable, LLC v. DIRECTV, Inc., 886 F.3d 375, 392 (4th Cir. 2018).

Haynes alleges no "alter ego" relationship between Bosch Components and Robert Bosch. Instead, Haynes obfuscates by using the term "Bosch Defendants" throughout her briefing while almost exclusively referring to the contacts of Robert Bosch, an entirely separate entity. See [D.E. 56] 15–26. For example, Haynes repeatedly cites to the affidavit of Robert Bosch employee Tony Szczotka while arguing that this court has personal jurisdiction over Bosch Components. See [D.E. 56] 16, 20, 23. Although Haynes highlights the contacts of Robert Bosch, she fails to show that the court has personal jurisdiction over Bosch Components.

In support of its motion to dismiss, Bosch provided the affidavit of Luke Perkowski, Director of Product Management at Bosch Components. See [D.E. 49-2] ¶ 2. Perkowski attests that Bosch Components had no role in supplying, marketing, manufacturing, or selling any component or software concerning the HD motorcycle that forms the basis of Haynes's complaint.

9

See [D.E. 49-2] 3. In opposition to Mr. Perkowski's affidavit, Haynes offers her original complaint. See [D.E. 56] 4–5. Haynes's original complaint, however, simply groups all Bosch entities together and fails to allege any specific contacts that Bosch Components had with North Carolina. See Compl. ¶¶ 16, 143, 153–54. Haynes's amended complaint repeats this error. See Am. Compl. ¶¶ 18, 135–72. Such blanket pleading cannot support personal jurisdiction. See Saudi, 427 F.3d at 276–77; Vision Motor, 981 F. Supp. 2d at 468; Lianyungang, 871 F. Supp. 2d at 488. Even when drawing all inferences in Haynes's favor, Haynes has failed to demonstrate that the court has specific personal jurisdiction over Bosch Components.

III.

A court has general personal jurisdiction over a defendant when their contacts "with the State are so continuous and systematic as to render them essentially at home in the forum State." BNSF, 581 U.S. at 413 (quotation omitted); Daimler, 571 U.S. at 127; Hubbard v. Eitan Grp. N. Am., 669 F. Supp. 3d 538, 546 n.1 (E.D.N.C. 2023) (collecting cases). Alternatively, defendants may consent to a state's general personal jurisdiction. See Ins. Corp. of Ireland, 456 U.S. at 703; Fidrych, 952 F.3d at 131. Likewise, a state may enact a law requiring an out-of-state corporation to consent to general personal jurisdiction in exchange for the right to conduct in-state business. See Mallory v. Norfolk S. Ry., 600 U.S. 122, 134–36 (2023).

Haynes contends that Bosch Components consented to general personal jurisdiction in North Carolina simply because its parent company, Robert Bosch, registered as an out-of-state business. See [D.E. 56] 9. The court, however, must analyze personal jurisdiction over each entity independently. See Calder, 465 U.S. at 790; Bristol-Myers, 582 U.S. at 268; Walden, 571 U.S. at 285–86; Rush, 444 U.S. at 332; Saudi, 427 F.3d at 276–77; Lianyungang, 871 F. Supp. 2d at 488. Notably, Bosch Components is not registered as an out-of-state business in North Carolina.

10

Moreover, even when drawing all inferences in Haynes's favor, she has not demonstrated this court has personal jurisdiction over Bosch Components through "reverse veil piercing." See Sky Cable, 886 F.3d at 392.

Next, Haynes cites Mallory and argues that Robert Bosch consented to North Carolina's general personal jurisdiction by registering as an out-of-state business. See [D.E. 56] 11–15. Haynes, however, misreads both Mallory and North Carolina's business registration statutes.

In Mallory, a Pennsylvania resident sued Norfolk Southern (a Virginia corporation) in Pennsylvania state court for injuries he allegedly suffered in Ohio and Virginia. See Mallory, 600 U.S. at 126. Pennsylvania law prohibits out-of-state corporations from conducting business in-state until they register as "foreign corporation[s]." Id. at 134. "[Q]ualification as a foreign corporation" statutorily permits Pennsylvania courts to "exercise general personal jurisdiction." Id. (quotation omitted). Several decades before the suit, Norfolk Southern registered with Pennsylvania as a "foreign corporation." Id. at 134–35. Norfolk Southern challenged Pennsylvania's registration statute as violating the Due Process Clause, but the Court disagreed. See id. at 134–36. The Court held that the Due Process Clause did not prohibit "a State from requiring an out-of-state corporation to consent to personal jurisdiction to do business there." Mallory, 600 U.S. at 127–28, 134–36; see Pa. Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co., 243 U.S. 93, 95–97 (1917).

Like Pennsylvania, North Carolina has an out-of-state business registration statute. See N.C. Gen. Stat. §§ 55-15-01–07. But unlike Pennsylvania, North Carolina does not demand that out-of-state businesses submit to its general personal jurisdiction. Compare N.C. Gen. Stat. § 55-15-01(a), with 42 Pa. Cons. Stat. § 5301. The statute in Mallory expressly permits Pennsylvania courts to "exercise general personal jurisdiction" over registered "foreign corporations." Mallory,

11

600 U.S. at 134–36; 42 Pa. Cons. Stat. § 5301. North Carolina's statute has no such requirement. See N.C. Gen. Stat. §§ 55-15-01–15-07. Thus, Mallory does not help Haynes. See, e.g., Bancredito, 2024 WL 731956, at *3; AGCS Marine Ins. Co. v. Crane & Equip. Fin. Co., No. 3:24-CV-355, 2024 WL 3838380, at *2 (W.D.N.C. Aug. 14, 2024) (unpublished); Zhang v. United Health Grp., Inc., No. 5:23-CV-194, 2024 WL 3576456, at *5 (W.D.N.C. June 28, 2024) (unpublished), report and recommendation adopted, No. 5:23-CV-194, 2024 WL 3571740 (W.D.N.C. July 29, 2024), adhered to on reconsideration, No. 5:23-CV-194, 2024 WL 3643257 (W.D.N.C. Aug. 1, 2024).

Haynes also relies on Pennsylvania Fire and Harris Teeter Supermarkets, Inc. v. ACE American Insurance Co., No. 2-CVS-5279, 2023 WL 6568766 (N.C. Super. Ct. Oct. 10, 2023). See [D.E. 56] 12–15. In Pennsylvania Fire, the Court held that Pennsylvania Fire had consented to personal jurisdiction in Missouri when it registered as an out-of-state insurance company. See Pennsylvania Fire, 243 U.S. at 95–97. There, the Missouri Supreme Court had interpreted its state insurance statutes to require all out-of-state insurance companies to consent to general personal jurisdiction. See Mallory, 600 U.S. at 151–52 (Alito, J., concurring); Gold Issue Mining & Milling Co. v. Pa. Fire Ins. Co. of Philadelphia, 267 Mo. 524, 549–550, 184 S.W. 999, 1003–05 (1916). In Harris Teeter, the North Carolina Business Court, citing Mallory and Pennsylvania Fire, held that North Carolina's insurance registration statute requires out-of-state insurance companies to consent to personal jurisdiction. See Harris Teeter, 2023 WL 6568766, at *12–14.

Robert Bosch does not sell insurance and has not registered under North Carolina's insurance registration statute. See N.C. Gen. Stat. §§ 58-16-5, 16-30. Moreover, North Carolina law explicitly recognizes the distinction between business registration and insurance provider registration. See N.C. Gen. Stat. § 55-15-01(d). Furthermore, North Carolina's insurance statute,

like its business registration statute, lacks a "general personal jurisdiction" clause. Compare N.C. Gen. Stat. §§ 55-15-01(a), 15-03(a), 15-05(a), and N.C. Gen. Stat. § 58-16-5, with 42 Pa. Cons. Stat. § 5301. Thus, Pennsylvania Fire and Harris Teeter do not help Haynes. Finally, no evidence suggests that Robert Bosch otherwise consented to general personal jurisdiction in North Carolina. Accordingly, the court lacks general personal jurisdiction over Robert Bosch.

IV.

In sum, the court GRANTS the Bosch defendants' motion to dismiss for lack of personal jurisdiction [D.E. 48]. The court DISMISSES WITHOUT PREJUDICE the claims against Robert Bosch LLC, Bosch Brake Components, LLC, and Bosch Global Software Technologies Private Limited and these defendants are no longer parties.

SO ORDERED. This 24 day of January, 2025.

                                                  JAMES C. DEVER III
                                                  United States District Judge